PRICE, Judge.
Albert J. Otto, a Conoco bulk distributor, brought this action against Henry Temple, dba Henry Temple Oil Company, seeking damages for an alleged invasion of Otto’s rights as the lessee of a service station location at 3401 West 70th Street in the City of Shreveport.
Otto contends Temple came on the leased property in November of 1970 and without permission or legal right removed the gasoline pumps and identification signs maintained at the station by Otto for use by the operator in the sale of Conoco products. This equipment is alleged to have been replaced by Temple with pumps and signs advertising the Arco brand of products distributed by Temple. Otto claims damages totaling $1,356.54 as costs of rein-stallation of pumps, loss of revenues, cleaning and painting expense.
*182 The case was tried before a jury who returned a verdict for plaintiff in the sum of $1,100.
Defendant on this appeal requests us to review the question of liability and the sufficiency of the evidence to support the amount awarded as damages. We find no error in the judgment regarding defendant’s liability but find the evidence insufficient to prove certain items claimed by plaintiff as damages. For the reasons given hereinafter we amend and affirm the judgment appealed from. We understand the facts and circumstances giving rise to this litigation as shown by the record to be substantially as follows:
The subject property was owned by Herman Washington who leased the premises to Otto by written agreement on December 5, 1968, for a term of one year. After expiration of the written lease Otto continued to lease on a month-to-month basis for the same rental as provided in the prior written agreement. On July 16, 1970, Otto executed a written agreement subleasing the premises to Gene Hallman for a term of one year. Each of these lease agreements provide a rental equal to one cent per gallon on all gasoline delivered to the premises payable monthly. Throughout the existence of this sublease, Hallman sold exclusively Conoco gasoline furnished him by plaintiff.
About November 20, 1970, a negotiation took place between Temple, Washington and Hallman concerning Temple taking over the premises under a new lease from Washington and the distribution of Temple’s brand of petroleum products by Hall-man. Pursuant to this verbal discussion, Temple’s employees went on the premises on November 24, 1970, and removed the pumps and signs of Otto bearing the Cono-co label and replaced them with Temple’s. After removing the equipment, Temple notified Otto by mail that he had taken over this station and that Otto could pick up the equipment belonging to him which was stored on the premises.
On December 9, 1970, Temple forwarded Washington a check for the first month’s rental under their purported agreement, accompanied by a handwritten letter which set forth the terms and conditions allegedly agreed on. The check was returned on December 11, 1970, by Washington with the explanation he had sold the property to Otto. After execution of the deed of transfer to the property from Washington on December 12, 1970, Otto notified Temple and Hallman to vacate the premises, which request was promptly complied with.
Otto contends the entry upon the premises and acts committed thereon by Temple on or about November 24th, were a trespass against his leasehold rights and Temple is liable in tort for any ensuing damage.
Temple, to the contrary, contends he was acting pursuant to a verbal lease agreement with the owner of the premises and with the permission of the sublessee who was in possession of the premises at the time. Therefore, any action for damages for wrongful eviction must be against the owner, Washington, or the sublessee, Hall-man.
As authority for his' position defendant relies on La.Civ.Code art. 2696, which provides :
“If the lessee be evicted, the lessor is answerable for the damage and loss which he sustained by the interruption of the lease.”
and Article 2703, which provides:
“The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance.”
Under the facts and circumstances as shown by the evidence in this case, these articles offer no protection to defendant.
*183 There is no question that Otto possessed a leasehold interest in the premises at the time Temple removed his equipment. Nor is there any doubt that the removal of his equipment constituted an eviction for which the responsible party is liable for the damages ensuing therefrom.
Although Temple contends he was in good faith and was acting pursuant to a valid verbal lease at the time his employees displaced Otto’s equipment, we do not find the evidence to support his position.
The evidence is conflicting on whether Washington and Temple reached an understanding at their meeting on November 20, 1970, that could be construed as a consummated verbal lease agreement taking immediate effect.
It is apparent the jury decided this issue adversely to Temple and we find the evidence to preponderate in favor of this conclusion.
Temple’s actions in writing out his understanding of the purported agreement and mailing it to Washington along with a check for the minimum rental for the first month is indicative he was uncertain that both parties had a clear understanding on the matter. The second line of the letter reading “This letter, with okay of my attorney, will serve as our lease,” further shows the agreement was incomplete prior to this time.
We also understand from Temple’s testimony that he desired to quickly take possession and install his pumps before Otto became aware he had negotiated with the owner for the station.
The testimony taken as a whole convinces us Temple was fully aware of Otto’s leasehold rights at the time he entered upon the premises and his actions in removing Otto’s equipment constituted a trespass for which he is liable under La. Civ.Code art. 2315.
The items of damages claimed by Otto as a result of his eviction are itemized in his petition as follows:
1. The cost paid to Jones Brothers Co., Inc. for reinstallation of two pumps, . sign and pole in the amount of $276.-54.
2. The sum of $40.00 paid to a regular employee of Otto for extra time spent in special cleaning at the station.
3. Miscellaneous painting and cleaning in the amount of $200.
4. The loss of profits and revenues during a period from December 1, 1970, until March 3, 1971, totaling $750.00.
We consider the evidence sufficient to sustain the first item for reinstallation of equipment. Temple contends this cost is excessive for this work and part of the work done by Jones Brothers was not caused by his actions. Fred Jones testified the charge made was the usual and normal charge for this work and the work performed not relating to replacement of the two pumps was inconsequential. Therefore, the cost of the check valve, $10.00, and the dresser coupling, $9.00, are the only items that should be deducted from the cost of his services.
Item 2, the cleaning cost paid to an off-time employee, is supported by testimony and is reasonable.
Item 3, relating to costs of painting and cleaning is not shown to have been related to the actions of Temple and is not supported by sufficient evidence.
The evidence offered on Otto’s claim for loss of profit would not enable us to ascertain this item with any degree of certainty. His profit from the operator’s sale of gasoline at this station is said to be 2.5 cents per gallon on gasoline delivered. This interruption admittedly happened during the' months when the least amount of gasoline is sold at this location.
*184 According to the testimony of Hallman, the operator during this period, this station was not very profitable and total gallons sold during December and January was approximately 1,600 per month. The evidence does not establish Otto earned any greater profit than $50 per month from the gasoline delivered in these months and he was out of possession slightly less than two months. We conclude the sum of $100 is responsive to the evidence for this item.
We recapitulate the items of damages as follows:
Reinstallation of equipment $257.54
Cleaning costs 40.00
Loss of profits 100.00
For the foregoing reasons the judgment appealed from is amended to reduce the sum awarded plaintiff from $1,100 to $397.54, and as amended is affirmed.
The costs of this appeal are to be paid by appellant.